UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                        Chapter 11
NANCY J. HERTZFELD,                           Case No. 23-10058 (LGB)

                                 Debtor.
---------------------------------------------------------x


**SECOND AMENDED DISCLOSURE STATEMENT IN CONNECTION WITH
CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR**


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR
REJECTIONS OF THE PLAN. ACCEPTANCES OR
REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY
THE BANKRUPTCY COURT. THIS SECOND AMENDED
DISCLOSURE STATEMENT IS BEING SUBMITTED FOR
APPROVAL *BUT HAS NOT YET BEEN APPROVED BY THE
COURT.***


**PICK & ZABICKI LLP**
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000
Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.

*Counsel to the Debtor*

I.    **PURPOSE OF THIS DISCLOSURE STATEMENT**

Nancy J. Hertzfeld, the debtor and debtor-in-possession herein (the "Debtor"), provides this Second Amended Disclosure Statement (the "Disclosure Statement"), pursuant to § 1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all of her known creditors and other parties in interest for the purpose of soliciting acceptances of her proposed Chapter 11 Plan of Reorganization (the "Plan"). The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and a copy of the same is attached hereto as *Exhibit "A"*. By Order dated December __, 2023, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtor's creditors to make an informed decision whether to accept or reject the Plan.

**The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy Estate and the anticipated recovery by creditors of the Debtor. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.**

Briefly, the Plan provides for a reorganization of the Debtor's financial obligations and affairs. The Distributions contemplated to be made under the Plan will be funded by the proceeds of the post-Confirmation sale of the Debtor's residence. Under the Plan:

(a)    Any Statutory Fees owed by the Debtor as of the Effective Date, together with any applicable interest thereon, will be fully paid on the Effective Date of the Plan, and any Statutory Fees, together with any applicable interest thereon, that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed, whichever occurs earlier;

(b)     All Allowed Administrative Claims will be fully paid on the Effective Date, or upon such terms as may be agreed upon between the Debtor and any holders of Allowed Administrative Claims;

(c)     The Allowed Priority Tax Claim held by the Internal Revenue Service (the "IRS") (in the amount of $54,244.69) will be fully paid on the Effective Date;

(d)     The Allowed Priority Tax Claim held by the New York State Department of Taxation and Finance ("NYS Tax") (in the amount of $21,550.34) will be fully paid on the Effective Date;

(e)     In full satisfaction of its Allowed First Mortgage Claim in Class 1, JPMorgan Chase Bank, N.A. ("JPMorgan") will receive a Cash distribution in the full amount of its Allowed Claim (JPMorgan has filed a claim for $527,753.21) on the Effective Date; and

(f)     The Allowed General Unsecured Claims in Class 2 (scheduled and/or filed in the total amount of $31,765.34) will be fully paid, without interest, on the Effective Date.

Detailed voting instructions are provided with the Ballot accompanying this Disclosure Statement.  Briefly, to vote on the Plan, a voting holder of an Allowed Claim in Class 2 (General Unsecured Claims) must complete the Ballot and mail it so that it is received no later than the Voting Deadline, which is 5:00 p.m. (Prevailing Eastern Time) on January __ , 2024, at Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.  Votes may not be transmitted orally, by facsimile or by e-mail.  If a Ballot is damaged or lost, you may contact Pick & Zabicki LLP at (212) 695-6000 to receive another. Any Ballot that is executed and returned but which does not indicate an acceptance or rejection of the Plan will not be counted.  Accordingly, the Debtor urges all holders of Allowed Claims in voting Classes to promptly return their signed and completed Ballots.  A hearing to consider the Debtor's request for Confirmation of the Plan will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Lisa G. Beckerman, One Bowling

Green, New York, New York 10004 on January    _, 2024 at 10:00 a.m. (Prevailing Eastern

Time).

The Debtor urges that all Claimants entitled to vote, vote in favor of the Plan.

## II.    DISCLAIMER

NO PERSON MAY BE GIVEN ANY INFORMATION OR MAKE ANY
REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS
CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE
SOLICITATION OF ACCEPTANCES OF THE PLAN.  THE STATEMENTS CONTAINED
IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF,
AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED
HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE.  ALL CREDITORS
SHOULD READ CAREFULLY AND CONSIDER FULLY THIS DISCLOSURE
STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN.  TO THE EXTENT OF
ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT,
THE TERMS OF THE PLAN SHALL CONTROL.  TERMS USED IN THIS DISCLOSURE
STATEMENT BUT THAT ARE NOT OTHERWISE DEFINED HEREIN HAVE THE
MEANING ASCRIBED TO THEM IN THE PLAN AND, IF NOT DEFINED IN THE PLAN,
THEN IN THE BANKRUPTCY CODE.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER
ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT
CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY,
STIPULATION, OR WAIVER, BUT RATHER AS THE EQUIVALENT OF A STATEMENT
MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF
THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN,
EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION.
ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT
SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO
THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH
DOCUMENTS OR STATUTORY PROVISIONS.  EXCEPT WHERE OTHERWISE
SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS
DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTOR'S BOOKS
AND RECORDS AND PUBLIC PLEADINGS.  ALTHOUGH DILIGENT EFFORTS HAVE
BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE
DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS
WITHOUT SOME INACCURACY OR OMISSION.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS
INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY

NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

THE COURT-APPROVED NOTICE WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN. A FORM BALLOT FOR VOTING ON THE ACCEPTANCE OR REJECTION OF THE PLAN IS ALSO PROVIDED HEREWITH. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN AND THE ACCOMPANYING NOTICE IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

## III.   BACKGROUND CONCERNING THE DEBTOR, THE BANKRUPTCY FILING AND THE ADMINISTRATION OF THE DEBTOR'S ESTATE

### A. General Background Concerning the Debtor and Her Bankruptcy Filing

The Debtor is 84 years old and continues to work as a commercial real estate broker. The Debtor owns and resides in a luxury residential cooperative apartment unit located at 170 East 78th Street, Unit 9E, New York, New York 10075 (the "Property"). In January 2022, and as a result of certain maintenance payment defaults, the Debtor was served with a Notice of Foreclosure and Termination by the building association, 170 East 78th Street Owners Corp., advising that all of the Debtor's right, title and interest with respect to the capital stock allocated to her residence would be cancelled and that the proprietary lease with respect to her residence would terminate.

The Debtor believes that the Property currently has a fair market value of not less than $1,800,000.00. The Property is encumbered by a first priority security interest (the "First

Mortgage") held by JPMorgan Chase Bank, N.A. (the "Bank") in connection with which the Bank filed a proof of claim in the Chapter 11 Case totaling $527,753.21 (such amount continues to accrue interest and professional fees). In addition to the above maintenance defaults, the Internal Revenue Service (the "IRS") has filed a Priority Tax Claim against the Debtor in the amount of $54,244.69, as did the New York State Department of Taxation and Finance ("NYS Tax"), in the amount of $21,550.34.

Faced with the above-described circumstances, the Debtor consulted with counsel to discuss the filing of a personal bankruptcy petition to provide the Debtor with an opportunity to avoid the loss of the Property. On January 18, 2023 (the "Petition Date"), the Debtor sought relief under chapter 11 of the Bankruptcy Code. Simultaneously therewith, the Debtor filed her Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statement of Financial Affairs (the "Schedules") with the Bankruptcy Court pursuant to Rule 1007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**B.      Administration of the Debtor's Estate**

Immediately following her chapter 11 filing, and pursuant to Orders of the Bankruptcy Court, the Debtor retained general bankruptcy counsel to assist in the administration of her Chapter 11 Case and her bankruptcy Estate. The illustrations below are merely a sampling of the numerous steps taken by the Debtor and her professionals.

The Debtor began the administration of her chapter 11 case by conducting an investigation of her assets to determine whether any value could be obtained therefrom for the benefit of her creditors. Many of the Debtor's assets, such as certain of her personal property (*e.g.*, home furnishings, wardrobe, and the like) were exempted from collection and application in bankruptcy, were of minimal value and/or were necessary to the Debtor's day-to-day living.

6

Similarly, the Debtor's ownership interest in the Property is encumbered by a mortgage subject to a $179,975.00 "homestead" exemption in favor of the Debtor.

At the inception of the Chapter 11 case the Debtor and her professionals had conducted an investigation of soliciting a reverse mortgage on her residence.   Notwithstanding multiple communications with multiple entities that provide reverse mortgage funding, none would agree to provide it to the Debtor or were unable to consider providing a reverse mortgage until the taxes were first paid in full.   The Debtor has recently reopened discussions with Nationwide Equities Corporation which has advised that they would  revisit the possibility of providing a reverse mortgage on the Property based on 50%  of the value of  the Property.  Those discussions are ongoing.

As discussed above, the Debtor's sole source of income is her employment as a commercial real estate broker on a commission basis.  As such, the Debtor's income stream is unpredictable and is dependent on numerous factors beyond the Debtor's control (such as commercial real estate market conditions, competition from other commercial real estate brokers, and the like).   Unfortunately, the Debtor was unable to close on multiple pending projects and did not have any net disposable income after payment of her ongoing necessary expenses to support a reorganization plan.  The Debtor and her professionals ultimately concluded that the Debtor would need to "downsize" and sell her cooperative apartment and utilize the net proceeds to pay her claims on the Effective Date.

The Debtor sought and obtained an Order, dated July 24, 2014, from the Bankruptcy Court setting March 10, 2023 as the last date by which proofs of claim for pre-Petition Date obligations of the Debtor had to be filed (and June 17, 2023 for proofs of claim by governmental

units).   A Court-approved notice concerning the claims "bar date" was mailed to all known creditors of the Debtor.  A total of four (4) proofs of claim were filed against the Debtor.

The Debtor also sought and obtained an Order dated April 10, 2023 authorizing the retention of  the Arden Group International LLC as the Debtor's real estate broker.   The broker has been showing the Property since April, 2023 including having listed it on New York's Residential Listing Service ("REBNY.COM), Streeteasy.com, Zillow.com, and Trulia.com and sending a proverbial weekly  "e-mail blast" including  in advance of pending open houses. The Property has been shown to approximately twenty possible interested parties.  To date only one offer has been received for the sum of $1,800,000.00   A contract was recently  signed  pending receipt of a wire transfer of the good faith deposit, a copy of which is attached hereto as *Exhibit "B"*.   The tentative contract of sale is subject to Bankruptcy Court approval and any higher or better bid that might be made for the Property.    In the event that the prospective buyer fails to close on the Property or fails to remit the good faith deposit then it is the Debtor's intention to promptly thereafter file a motion to schedule an auction sale of the Property

The Debtor's Estate has been fully administered with an eye toward maximizing the recovery by the Debtor's creditors.   Accordingly, the Debtor now proposes the Plan to her known creditors and parties in interest.

## IV.    OVERVIEW OF THE PLAN

### A.    Generally

The overall purpose of the Plan is to distribute value to the Debtor's creditors on a fair and equitable basis and in accordance with the priorities established by law and/or by agreement. The Plan represents the culmination of the analyses conducted and efforts expended by the Debtor and her professionals concerning the best means to maximize and allocate value to the

Debtor's creditors.  The Debtor has determined that the Plan provides the highest value to creditors and greatly exceeds any value that might otherwise be achievable in a liquidation under chapter 7 of the Bankruptcy Code.  Accordingly, the Debtor recommends that the Plan be accepted by her creditors.

**B.      Summary of Classification and Treatment of Claims**

Under the Plan, Claims against the Debtor are grouped into Classes according to their similarity with other Claims and their relative legal and contractual priorities.  Under the Bankruptcy Code, only the holders of Allowed Claims in "impaired" Classes are entitled to vote and to receive Distributions under the Plan.  The classification and treatment of such Claims are summarized below.  All Claims other than Statutory Fees, Administrative Claims and Priority Tax Claims are placed in Classes under the Plan. The Debtor believes that this classification scheme is consistent with the requirements of the Bankruptcy Code.

**1.      Statutory Fees**

The Debtor (and the Post-Confirmation Debtor) has a statutory duty to pay all outstanding amounts that may be due to the United States Trustee upon Confirmation, together with any fees due pursuant to 28 U.S.C. § 1930(a)(6) through the date of the entry of a final decree closing the Chapter 11 Case, conversion of the case to chapter 7 or dismissal of the case.

The Debtor estimates that the Statutory Fees owed on the Effective Date of the Plan will total approximately $3,400.00 (representing 0.4% of the approximate amounts proposed to be disbursed under the Plan on the Effective Date).  Any Statutory Fees that are due on or prior to the Effective Date of the Plan, including any applicable interest, shall be paid on the Effective Date from the Debtor's Cash Contribution.  Statutory Fees that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry

of a final decree closing the Chapter 11 Case, conversion of the case to chapter 7 or dismissal of the case.

2.      **Administrative Claims**

Administrative Claims are defined in the Plan as the costs and expenses of administration of the Debtor's chapter 11 case incurred on or after the Petition Date, and (except as to post-Petition Date obligations incurred and/or paid by the Debtor in the ordinary course) allowed by final order under § 503(b) of the Bankruptcy Code.   These claims include, without limitation, any actual and necessary expenses: (a) of preserving the Estate of the Debtor; (b) any costs and expenses of the Debtor and/or the Post-Confirmation Debtor for the management, maintenance, preservation, sale or other disposition of any assets; (c) the administration and implementation of the Plan; (d) the administration, prosecution or defense of Claims by or Claims against the Debtor and for Distributions under the Plan; and (e) any allowances of professional compensation and reimbursement of expenses to the extent allowed by an order of the Bankruptcy Court, whether arising before or after the Effective Date.

In accordance with certain mandatory provisions of the Bankruptcy Code, the Plan provides that holders of Allowed Administrative Claims will be entitled to full payment of their Claims: (a) in cash on the Effective Date; or (b) on such terms as are mutually agreed to by the holder of an Allowed Administrative Claim and the Debtor.   Thus, Allowed Administrative Claims are unclassified under the Plan and holders of Allowed Administrative Claims are not entitled to vote on the acceptance or rejection of the Plan.

The only known potential Administrative Expense Claims are the amounts owed by the Debtor: (a) to her professionals on account of professional services rendered and reimbursable expenses incurred on her behalf in this case; and (b) to 170 East 78th Street Owners Corp. on

account of post-Petition Date maintenance with respect to the Property.  If there is no significant

litigation initiated or objections filed with respect to Confirmation of the Plan, and the Plan is

confirmed within the next thirty (30) to ninety (90) days, and subject to the approval of the

Bankruptcy Court, the Allowed Administrative Claims are estimated to be as follows:

| Claimant | Amount | Description | Agreed Upon Treatment |
|---|---|---|---|
| Pick & Zabicki LLP | $70,000 | Estimated Fees and Expenses to be Requested as Counsel to the Debtor | Full payment on the Effective Date of the Plan. |
| Arden Group International | $90,000 | Estimated Fees and Expenses to be Requested as Broker (5% of the gross sale price of the Property) | Full payment on the Effective Date of the Plan. |
| 170 East 78th Street Owners Corp. | $55,000 | Estimated Post-Petition Date Maintenance Due With Respect to the Property | Full payment on the Effective Date of the Plan. |
| **Total Estimated Allowed Administrative Claims:** | **$215,000** | | |

The actual amounts of the Allowed Administrative Claims may increase or decrease from

the amounts listed above prior to the Effective Date of the Plan and, with respect to the chapter

11 professionals, are subject to, among other things, the approval thereof by the Bankruptcy

Court upon the submission of appropriate applications for allowances of compensation and

reimbursement of expenses by the above-listed professionals.

    **3.**       **Priority Tax Claims**

Priority Tax Claims are unclassified under the Plan and include claims for tax-related

obligations that are entitled to priority under § 507(a)(8) of the Bankruptcy Code.  Generally,

Priority Tax Claims are (subject to certain timing and date of assessment limitations) unsecured

claims of "governmental units" (as defined in the Bankruptcy Code) based upon: (a) taxes measured by income or gross receipts; (b) property taxes; (c) withholding taxes; (d) employment taxes; (e) excise taxes; (f) customs duties; and (g) penalties based on actual pecuniary losses relating to the foregoing.  These Priority Tax Claims include, among others, all taxes measured by income or gross receipts attributable to the three-year period immediately preceding the Petition Date (*i.e.*, from January, 2020 through the Petition Date).

The Plan provides for payment in full of the Allowed Priority Tax Claims filed by the IRS in the amount of $54,244.69and NYS Tax in the amount of $21,550.34.  The Allowed Priority Tax Claims held by the IRS and NYS Tax are not classified under the Plan and, accordingly, the IRS and NYS Tax are not entitled to vote on the acceptance/rejection of the Plan on account of their respective Claims.

### 4.        Class 1 – First Mortgage Claim

Class 1 consists of the Allowed First Mortgage Claim of JPMorgan Chase Bank, N.A. against the Debtor (Claim No. 4) representing the balance owed to the Bank secured by the First Mortgage against the Property which the Bank has asserted totaled $527,753.21 as of the Petition Date, January 18, 2023 (which has and will accrue additional interest and professional fees through the Effective Date). Under the Plan, the Bank will receive a Cash Distribution in the amount of its Allowed Secured Claim on the Effective Date in full satisfaction of its Allowed First Mortgage Claim.

Class 1 is unimpaired under the Plan and, thus, JPMorgan Chase Bank, N.A is not entitled to vote as to the acceptance or rejection of the Plan on account of its Allowed First Mortgage Claim.

5. **Class 2 – General Unsecured Claims.**

Class 2 consists of the Allowed General Unsecured Claims against the Debtor.  Under the

Plan, the Allowed General Unsecured Claims will be fully paid, without interest, by the Debtor

on the Effective Date in full satisfaction of their respective Claims, without interest.   The

Allowed Claims in Class 2 currently total 31,765.34.

| Claim No./ Schedule | Claimant | Allowed Claim Amount | Distribution Amount |
|---|---|---|---|
| 1 | NYS Dept. of Taxation & Finance | $2,476.00 | $2,476.00 |
| 2 | Dept. of Treasury – IRS | $9,335.07 | $9,335.07 |
| 3 | 170 East 78th Street Owners Corp. | $19,954.27 | $19,954.27 |
| | **Total Allowed General Unsecured Claims:** | | **$31,765.34** |

Class 2 Claims are impaired under the Plan and, thus, the holders of such Claims are

entitled to vote as to the acceptance or rejection of the Plan.

C.     **Distributions Under and Implementation of the Plan**

Subsequent to the Effective Date of the Plan, the Debtor will consummate a sale of the

Property subject to higher and better offers.  The Distributions contemplated to be made on the

Effective Date of the Plan will be funded from the net proceeds generated from the sale.  Counsel

to the Debtor will serve as "Disbursing Agent" for the Debtor with regard to the Effective Date

Distributions.

On the Effective Date of the Plan, the following amounts will be distributed by the Debtor's counsel:

| Type/Class | Amount | Comments |
| --- | --- | --- |
| Statutory Fees | $3,400 | Estimated Statutory Fees Owed as of the Effective Date of the Plan |
| Administrative Claims | $215,000 | Represents Full Payment of Allowed Administrative Expenses[1] |
| IRS Priority Tax Claim | $54,245 | Represents full payment of its Allowed Priority Tax Claim |
| NYS Tax Priority Tax Claim | $21,551 | Represents full payment of its Allowed Priority Tax Claim |
| Class 1 (First Mortgage Claim) | $527,754 | Represents Full Payment of JPMorgan Chase Bank, N.A.'s Secured Claim |
| Class 2 (General Unsecured Claims) | $31,766 | Represents full payment of Allowed General Unsecured Claims |
| **Total Effective Date Distributions** | **$853,716** | |

The post-Confirmation payments to the holders of Allowed Priority Tax Claims shall be made by the Post-Confirmation Debtor from her future earnings. The Post-Confirmation Debtor will be responsible for making these payments.

## V.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under § 365 of the Bankruptcy Code, a debtor has the right, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Although not defined in the Bankruptcy Code, an "executory contract" is usually described as a contract under which material performance (other than the payment of money) is due by each party. If an executory contract or unexpired lease is rejected under § 365 of the Bankruptcy Code, the

---

[1] Inclusive of the Broker's Commission of 5% ($90,000) of the Gross Sale Price (assuming $1,800,000) of the Debtor's residence).

"rejection" is treated as a breach of the contract or lease prior to the Petition Date giving rise to a pre-petition unsecured claim. In addition, "rejection" damages are limited in certain contexts under § 502 of the Bankruptcy Code. If an executory contract or unexpired lease is assumed, the Debtor has the obligation to cure any default and to perform its obligations thereunder in accordance with the terms of such agreement.

The Debtor is a party to a Proprietary lease with respect to her ownership of her residence. The lease will be terminated on the closing date from the sale of her residence. The Debtor is not aware of any other leases or executory contracts to which he may be a party. The Plan nevertheless provides that all executory contracts and unexpired leases to which the Debtor is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the Debtor shall be deemed rejected and disaffirmed under the Plan as of the Effective Date in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code.

## VI. OBJECTIONS TO AND ESTIMATION OF CLAIMS

Except with regard to any late-filed Claim(s), any Claim(s) that is amended after the date hereof, or any Claim(s) arising from the rejection of any executory contract(s) or unexpired lease(s), all Claims asserted against the Debtor have been deemed Allowed Claims as described herein and in the Plan. Under the Plan, the Debtor may object, on appropriate grounds, to the allowance of any late-file Claim, any subsequently amended Claim or any Claim for rejection damages. In the event that any proof of Claim is filed, amended and/or asserted after the Effective Date, the Debtor shall have ninety (90) days from the date of such filing or amendment, which deadline may be extended by the Court upon motion of the Debtor without notice. All objections shall be litigated to Final Order. The Plan reserves the right of the Debtor to

compromise, settle, withdraw or resolve, by any other method approved by the Bankruptcy Court, any such objections to Claims.

Under the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. All of the aforementioned claim objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted method.

The Debtor believes that all of the Claims against the Estate (that have been asserted as of the date hereof) have been fully reconciled or will be resolved or adjudicated prior to the Confirmation. Thus, the Debtor does not anticipate that any objections to Claims will be pursued.

## VII.    CAUSES OF ACTION

Except as otherwise provided in the Plan, any and all Causes of Action[2] shall remain assets of the Estate pursuant to § 1123(b)(3)(B) of the Bankruptcy Code on the Effective Date. Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, only the Debtor, or the Post-Confirmation Debtor, as the case may be, shall have the right to pursue or not to pursue, or, subject to the terms

---

[2] "Causes of Action" is defined in the Plan as "all claims, actions, third-party claims, counterclaims and crossclaims (including, without limitation, an avoidance, recovery, or subordination actions against insiders and/or any other persons or entities under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code) in favor of the Debtor and/or the Estate existing on the Effective Date against any entity based in law or equity, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order."

of the Plan, compromise or settle Causes of Action owned or held by the Debtor and/or her Estate as of the Effective Date.  From and after the Effective Date, the Debtor may commence, litigate, and settle any Causes of Action or rights to payment or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Debtor after the Effective Date, except as otherwise expressly provided in the Plan.  Other than as set forth herein, no other Person may pursue such Causes of Action after the Effective Date.  The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action whether commenced prior to or after the Effective Date.

**Creditors should note that the benefits, if any, whether in the form of monetary recoveries, setoffs, recoupments, defenses and the like, of all Causes of Action shall inure to the benefit of the Debtor and not any Creditors.  As such, recoveries by Creditors under the Plan shall not be affected by the pursuit, non-pursuit or outcome of any Causes of Action.**

The Debtor has reviewed her records with counsel and believes that all of her pre-Petition Date payments and transfers were made in the ordinary course.  As such, the Debtor does not believe that any preferential transfers, fraudulent conveyances or other actionable transfers were made prior to or after the Petition Date.  Accordingly, the Debtor does not believe that there are potential Causes of Action under Chapter 5 of the Bankruptcy Code in her favor which would benefit her Estate and, as such, the Debtor does not anticipate that any post-Confirmation litigation to recover on Causes of Action under Chapter 5 of the Bankruptcy Code will be pursued.  The Debtor nevertheless reserves all rights concerning any Causes of Action arising under Chapter 5 of the Bankruptcy Code to the extent that any such Causes of Action may exist.

Causes of Action of any kind or nature may be asserted by the Debtor or the Post-Confirmation

Debtor defensively, however.

## VIII.    LEGAL EFFECTS OF CONFIRMATION OF THE PLAN

### 1.    Binding Effect

Pursuant to § 1141(a) of the Bankruptcy Code, once confirmed, the provisions of the Plan

shall be binding upon the Debtor, all Creditors and other parties in interest, regardless of whether

they cast a Ballot to accept or reject the Plan.

### 2.    Discharge

Pursuant to § 1141(d)(5) of the Bankruptcy Code, upon the completion of all payments

required under the Plan, the Bankruptcy Court will enter a discharge of the Debtor from her

debts that arose before the Confirmation Date. As such, the rights afforded in the Plan and the

treatment of all Claims therein shall be in exchange for and in complete satisfaction and release

of all Claims of any nature whatsoever (including any interest accrued on such Claims), from and

after the Petition Date against the Debtor and her Estate except as otherwise provided in the Plan,

in § 1141 of the Bankruptcy Code, or in the Confirmation Order.

### 3.    Limitation of Liability in Connection with the Plan

Pick & Zabicki LLP, as disbursing agent in connection with the initial Distributions

under the Plan, shall incur no liability, whatsoever, for any action taken, or failure to act, except

for its own gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct

and/or any disclosure of confidential information that causes damages.   Further, the Debtor and

her professionals shall have or incur no liability to the extent allowed under § 1125(e) of the

Bankruptcy Code and, in all respects, the Debtor and her professionals shall be entitled to rely

upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Nothing in the Plan shall limit the liability of the professionals of the Debtor to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1).

## IX.    RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a)    To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b)    To hear and determine:

(i)    all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(iii)    all rights or Causes of Action which may exist on behalf of the Estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the Estate;

(iv)    applications for allowance of compensation and expense reimbursement of professionals for periods prior to the Effective Date;

(v)    any and all applications, adversary proceedings and litigated matters;

(vi)    to enter a final decree closing the Chapter 11 Case; and

(vii)    to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

### X.   CONDITIONS TO CONFIRMATION, EFFECTIVE DATE AND CONSUMMATION OF THE PLAN

It is a condition to Confirmation of the Plan that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory to the Debtor in form and substance.  The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

(a)     The Bankruptcy Court shall have entered the Confirmation Order; and

(b)     The Confirmation Order shall have become a Final Order.

The Debtor may at any time, without notice or authorization of the Bankruptcy Court, waive any or all of the foregoing conditions.  The failure of the Debtor to satisfy or waive such condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any actions taken by the Debtor).  The Debtor reserves the right to assert that any appeal from the Confirmation Order shall be moot after substantial consummation of the Plan. In the event that the aforementioned conditions have not occurred or been waived on or before one hundred and eighty (180) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court made on the request of the Debtor or any party in interest and an opportunity for parties in interest to be heard.

### XI.   IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE

The tax consequences of the Plan may impact the decision of the holder of a Claim in determining whether to accept or reject the Plan.  Moreover, the tax consequences will vary depending upon the individual circumstances of holder of a Claim.

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the holders of Class 2 General Unsecured Claims.  The summary is

provided for informational purposes only and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change, possibly with retroactive effect.  This summary does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code and also does not discuss any aspects of state, local, or foreign taxation.  Additionally, a substantial amount of time may elapse between the Effective Date and the receipt of the final Distribution under the Plan.  Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated thereunder.  No ruling will be sought from the Internal Revenue Service with respect to any of the tax aspects of the Plan and no opinion of counsel has heretofore been obtained by the Debtor as proponent of the Plan with respect thereto. **Accordingly, each holder of a Claim should consult his, her or its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim under the Plan may have under federal, state and/or local tax laws, and the laws of any applicable foreign jurisdictions.**

On the exchange of its Claim for cash and/or property, each holder of a Claim in Class 2 will recognize gain or loss measured by the difference between: (a) the aggregate fair market value of the cash and/or property received; and (b) such holder's tax basis in the Claim. To the extent that the cash and/or property received by a holder of a Claim is attributable to accrued interest on such Claim, the cash and/or property received will be deemed made in payment of

such interest.  Conversely, a holder of a Claim will recognize a deductible loss to the extent any accrued interest previously included in its gross income is not paid in full.  The allocation for federal income tax purposes between principal and interest of amounts received in exchange for the discharge of a Claim at a discount is not clear.  However, the Debtor intends to treat any amount received by holders of Claims as first allocated to principal.

Where gain or loss is recognized by a holder in respect of its Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including but not limited to: (a) the nature or origin of the Claim; (b) the tax status of the holder; (c) whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held; (d) whether the Claim was acquired at a market discount; and (e) whether and to what extent the holder had previously claimed a bad debt deduction with respect to the Claim. Any cash and/or property received by a holder of a Claim after the Effective Date may be subject to the imputed interest provisions of the Tax Code.

No statement in this Disclosure Statement should be construed as legal or tax advice. The Debtor and her professionals do not assume any responsibility or liability for the tax consequences the holder of a Claim may incur as a result of the treatment afforded its Claim under the Plan.  Again, all holders of Claims are urged to consult with their own tax advisor regarding the potential tax consequences of the Plan.

**CIRCULAR 230 DISCLOSURE: This tax discussion was written to support the promotion or marketing of the Plan.  To ensure compliance with requirements imposed by the Internal Revenue Service, we are informing you that this discussion was not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer under the Tax Code.  Taxpayers**

should seek advice based on their particular circumstances from an independent tax advisor.

**XII.   GENERAL INFORMATION REGARDING CONFIRMATION PROCEDURE AND VOTING**

**A.   Plan Confirmation Process**

**1.   Requirements.**

The requirements for Confirmation of the Plan are set forth in detail in § 1129 of the Bankruptcy Code.  The following summarizes some of the more salient requirements for such Confirmation:

(a)   <u>Acceptance by Impaired Classes</u>.  As discussed in further detail below, except to the extent that the "cramdown" provision of § 1129(b) of the Bankruptcy Code may be invoked, each impaired Class of Claims must vote to accept the Plan.  "Impaired" is defined in § 1124 of the Bankruptcy Code.  A Claim is "impaired" unless the Plan leaves unaltered the legal, equitable and/or contractual rights of the holder thereof.  In order for the Plan to be accepted by an impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in the impaired Class of Claims must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to § 1129(b) of the Bankruptcy Code.

Although the Debtor does not anticipate having to resort to the "cramdown" provisions of the Bankruptcy Code, the Debtor suggests that creditors and parties in interest may wish to consult with counsel concerning these provisions.

(b)   <u>Feasibility</u>.  The Bankruptcy Court is required to find that the Plan is likely to be implemented and that the parties required to perform or pay monies under the Plan are likely to be able to do so.

23

(c)    "Best Interests" Test.   The Bankruptcy Court must find that the Plan is in the "best interests" of creditors.   To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against the Debtor: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount which such holder would receive if the Debtor's property were liquidated under chapter 7 of the Bankruptcy Code on that date.

(d)    Projected "Disposable Income" Test.   Pursuant to § 1129(a)(15)(B) of the Bankruptcy Code, if the holder of an Allowed General Unsecured Claim objects to the confirmation of the Plan, the Debtor will be required to demonstrate that the value of the property to distributed under the Plan is not less than her projected disposable income for the five (5) year period following the date of the Effective Date.

2.    **Confirmation Hearing**

To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the Requirements of § 1129(b) of the Bankruptcy Code (the "Confirmation Hearing"). The Confirmation Hearing will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Lisa G. Beckerman, One Bowling Green, New York, New York 10004 on January __, 2024 at 10:00 a.m. (Prevailing Eastern Time).

3.    **Objections to Confirmation**

Any creditor or party-in-interest wishing to object to Confirmation of the Plan must state such objection in writing and appear at the Confirmation Hearing to pursue same.   Any objection must be filed with the Clerk of the Bankruptcy Court, with a courtesy copy sent to the chambers of the Honorable Lisa G. Beckerman, and served upon the following parties so as to be actually received by January __, 2024 at 5:00 p.m. (Prevailing Eastern Time): (i) Pick & Zabicki LLP,

369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.; and (ii) Office of the United States Trustee, U.S. Federal Office Building, One Bowling Green, New York, New York 10004.

**4.      Effect of Confirmation**

As discussed above, upon entry of the Confirmation Order, the Plan shall be binding upon the Debtor, all creditors and other parties in interest, regardless of whether they cast a Ballot to accept or reject the Plan.

**B.      Voting on the Plan**

**1.      Who May Vote**

Pursuant to § 1126 of the Bankruptcy Code, only the holders of Claims in Classes that are impaired under the Plan may vote on the Plan.

**2.      Classes Under the Plan**

Under the classification scheme provided in the Plan, Class 1 consists of the Allowed First Mortgage Claim (held by JPMorgan Chase Bank, N.A.) and Class 2 consists of all Allowed General Unsecured Claims against the Debtor.

**3.      Impairment of Claims**

Under the Plan, the Claims in Class 2 are impaired.  The Claim in Class 1 is unimpaired.

**4.      Voting**

Being impaired, holders of Claims in Class 2 are entitled to vote on the Plan. This Disclosure Statement is being distributed for informational purposes to all creditors and parties-in-interest without regard to their right to vote on the Plan.  If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for that purpose.

5.       **Estimation of Claims for Voting Purposes**

Solely for the purposes of voting on the Plan, and for no other purpose, each holder of an Allowed Claim shall include on its Ballot the amount which such Claimant believes is due to it from the Debtor.  THIS AMOUNT SHALL <u>NOT</u> BE DEEMED IN ANY MANNER TO BE THE ALLOWED AMOUNT OF SUCH CLAIM.  THE ALLOWED AMOUNT WILL <u>ONLY</u> BE DETERMINED AS PROVIDED IN THE PLAN.  The amount set forth on the Ballot is <u>solely</u> for the purpose of voting upon the Plan and for the calculation of whether the Plan shall have been accepted in accordance with § 1129(a) of the Bankruptcy Code.

If a Claimant holds more than one Claim in any one particular Class, all Claims of such holder in such particular Class shall be aggregated and deemed to be one Claim for purposes of determining the number and amount of Claims in such Class voting on the Plan.

6.       **Binding Effect**

Whether a Claimant votes on the Plan or not, such Claimant shall be bound by the terms of the Plan if the Plan shall be confirmed by the Bankruptcy Court.  Unless a Ballot shall be completed and returned in accordance with the approved Bankruptcy Court procedures, a Claimant will not be included in the vote for purposes of accepting or rejecting the Plan or for purposes of determining the number of Persons voting on the Plan.

7.       **Voting Procedure and Deadlines**

In order for your vote to accept or reject the Plan to be tabulated, you must complete, date, sign and properly mail the enclosed Ballot to counsel to the Debtor at the following address: Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.

Pursuant to Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be <u>received</u> by counsel to the Debtor at the address set forth above on or before Jnauary __, 2024 at 5:00 p.m. (Prevailing Eastern Time).  Once you have delivered or mailed your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and a hearing.  Ballots or votes on the acceptance or rejection of the Plan cannot be transmitted orally or by facsimile.

Any Ballot received by counsel to the Debtor that does not identify the Claimant, or is unsigned, or which does not indicate acceptance or rejection, or (unless Claimant's Claim is listed as undisputed, not contingent and fully liquidated in the Debtor's current schedules of liabilities) does not include the amount believed to be owed such Claimant, shall not be counted as a vote, either to accept or reject the Plan.

You are urged to complete, date, sign, and promptly mail the enclosed Ballot.  Please be sure to complete the Ballot properly and legibly identify the amount of your Claim and the name of the Claimant.

## XIII.   FEASABILITY OF THE PLAN

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court must find that the Plan is likely to be implemented and that the parties required to perform or pay monies under the Plan are likely to be able to do so.  The Bankruptcy Court must further find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor.

As discussed above, the funds needed to make the Effective Date Distributions under the Plan will be on deposit with the Debtor's counsel at the time of Confirmation.

The Debtor believes that, after the restructuring of her debt obligations provided for under the Plan, the Post-Confirmation Debtor will be able to make all of her ongoing, ordinary debts.  Accordingly, the Debtor believes that the Plan is feasible and that Confirmation is not likely to be followed by the liquidation or further financial reorganization of the Debtor.

## XIV. BEST INTERESTS

Notwithstanding acceptance of the Plan by the requisite number of impaired Classes of Claims, the Bankruptcy Court must independently determine that the Plan provides each member of each impaired Class of Claims a recovery that has a value at least equal to the value of the Distribution that each such creditor would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

The Debtor believes that the Plan is in the best interests of creditors because it provides for a recovery by creditors which would not be achievable if the Debtor's assets were liquidated. Under the scenario presented under the Plan, holders of General Unsecured Claims will receive a recovery of 100% of the Allowed Amounts of their Claims.

Thus, the Debtor respectfully submits that the Plan is in the best interests of creditors.

## XIV. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor has evaluated alternatives to the Plan, including alternative Plan structures and terms; and the pursuit of various litigation strategies. While the Debtor has concluded that the Plan is the best alternative and will maximize recoveries by holders of Allowed Claims, if the Plan is not confirmed, the Debtor or any other party-in-interest could attempt to formulate and propose a different plan or plans of reorganization.  Further, if no plan of reorganization can be confirmed the Debtor's chapter 11 case may be dismissed or converted to a chapter 7 case, as

discussed more fully above. Accordingly, the Debtor believes that Confirmation and consummation of the Plan is preferable to the alternatives described above.

## XV.    RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtor believes that the Confirmation and consummation of the Plan is the best means available to provide the greatest level of recovery to creditors in accordance with their legal and contractual rights. Consequently, the Debtor urges all holders of Allowed Claims in Class 2 (General Unsecured Claims) to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before November __, 2023 at 5:00 p.m. (Prevailing Eastern Time).

Dated: New York, New York
      November 29, 2023

Respectfully submitted,


By:      */s/Nancy J. Hertzfeld*
          Nancy J. Hertzfeld
          Debtor-In-Possession

**READ AND APPROVED:**

      **PICK & ZABICKI LLP**
      Counsel to the Debtor


By:     */s/Douglas J. Pick*
         Douglas J. Pick
         369 Lexington Avenue, 12th Floor
         New York, New York 10017
         (212) 695-6000